UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
CROTONA 1967 CORP.,

                     Plaintiff,                    <u>Memorandum & Order</u>
                                                       10-CV-6004 (SMG)

     -against-

VIDU BROTHERS CORP. and
HARSHAD PATEL,

                     Defendants.
-----------------------------------------------------x
*Gold, S., United States Magistrate Judge*:

## INTRODUCTION

Plaintiff moves for summary judgment to enforce payment under a promissory note

executed by defendant Vidu Brother and made payable to plaintiff's predecessor-in-interest.

Plaintiff further seeks interest and attorney's fees as provided for in the note and to enforce a

personal guaranty made by defendant Harshad Patel.  Defendants do not dispute that the sum due

under the note has not been paid, but assert that they were fraudulently induced to execute the

note and related agreements.  Defendant Patel further contends that his guaranty was of limited

duration and had already expired when the note became due.

      The parties have consented to my jurisdiction for all purposes in this case.  Docket Entry

36.  For the reasons stated below, plaintiff's summary judgment motion is granted as to the

liability of corporate defendant Vidu Brother but denied as to the guaranty of individual

defendant Harshad Patel and attorney's fees.

## FACTS

      The following facts are drawn primarily from the parties' statements of material facts,

submitted pursuant to Local Civil Rule 56.1.  *See* Pl. R. 56.1, Docket Entry 45-2; Defs. R. 56.1,

Docket Entry 56.[1]  It is undisputed that individual defendant Harshad Patel, on behalf of his

corporation, defendant Vidu Brother Corp.,[2] executed a promissory note for $800,000 on

October 12, 2007, payable to a limited liability company called Ace Hotels Holding ("Ace

Hotels").  *See* Pl. R. 56.1 ¶ 3; Pl. Ex. C, Docket Entry 45-5 at 2 (copy of the note); Defs. R. 56.1

¶ 3.[3]  According to the operative complaint, the sole principal of Ace Hotels was Sanford Cohen,

until he conveyed ownership of the company to Frank Santora on October 12, the date of the

note.  Amend. Compl. ¶¶ 3-4, Docket Entry 8.  The note provides for payment of $800,000, plus

10% interest per annum, on October 12, 2009, two years from the date of execution.  The note

further provides for 15% interest, as well as reasonable attorney's fees expended to enforce the

note, in the event of default.  Pl. R. 56.1 ¶¶ 7-9; Pl. Ex. C; Defs. R. 56.1 ¶¶ 7-9.

At the same time it made the promissory note at issue, Vidu Brother executed a second

note with Ace Hotels for $800,000, with the option for Ace Hotels to cancel the note by

"buy[ing] back . . . a 16% interest in 282-292 Meeker Avenue, Brooklyn New York." Pl. Ex. C.,

Docket Entry 45-5 at 4.  This note appears to have been canceled or otherwise settled by the

parties.  *See* Pl. Mem. at 2.

Also on October 12, 2007, individual defendant Patel signed a personal guaranty for

payment of the two notes, with attendant interest, should the corporate defendant default.  *See* Pl.

R. 56.1 ¶ 4; Pl. Ex. E.  A handwritten note at the top of the guaranty appears to state "Interim

[word illegible] sec. agreement provided."  Pl. Ex. E.  Defendants contend that the guaranty "was

---

[1] Defendants submitted their Rule 56.1 statement a month after the court-ordered deadline to do so.  *See* Order dated May 2, 2012.  Nevertheless, it is considered here in the interests of efficacy and completeness.  Due to other failures to comply with the schedule set by the Court, plaintiff seeks sanctions, including striking evidence used in opposition to summary judgment.  *See* Pl. Reply ¶ 6.  Given the Court's decision and the evidence relied upon in support of it, it is not necessary to consider such sanctions.
[2] The corporate defendant is variously called Vidu Brother Corporation and Vidu Brothers Corporation in the parties' papers.  It will be referred to here as "Vidu Brother," except where documents using the conflicting spelling are quoted.
[3] "Pl. Ex." refers to the exhibits attached to plaintiff's Rule 56.1 Statement, Docket Entry 45.

intended as temporary security" that was "to be replaced by a secured interest in [Patel's] hotel in Waynesboro, P.A."  Defs. R. 56.1 ¶ 5.  Defendants' former counsel further avers that he added the notation at the top of the guaranty and later informed a representative of plaintiff that he understood the guaranty to expire in January 2008.  Curran Aff. ¶¶ 29-30; *see also* Curran Aff., Ex. 8, Docket Entry 48 at 74 (letter dated November 20, 2007 from Curran to Frank Castiglione, attorney for Ace Hotels, stating that Castiglione had committed to accept a replacement security agreement and to void Patel's personal guaranty, and asserting a deadline of January 12, 2008 for doing so); Patel Aff. ¶ 8.E (stating that Patel understood the guaranty would be temporary and be replaced by a secured interest in a hotel owned by Patel, but that plaintiff then refused to accept a substitution of security).[4]  Plaintiff, on the other hand, states that the guaranty was, by its terms, "absolute and unconditional," Pl. R. 56.1 ¶ 5, and that the handwriting on the document was a unilateral modification made by defendants.  *See* Pl. Reply ¶ 48.  Plaintiff, however, has not submitted a copy of the guaranty without this handwritten notation.

The note at issue states that it is in consideration for "value received."  Pl. Ex. C.; *see also* Defs. R. 56.1 Statement ¶ 13 (admitting "that the promissory note bears, on its face, a representation by the obligor / payor on the note, defendant Vidu Brothers Corp., that Vidu made and delivered the note for value received").  Although the nature of the "value received" is not specified in the note, the note appears to have been executed in connection with a real estate transaction that was completed at the time of the note's issuance in October 2007.  More specifically, a contract for certain real property in Williamsburg, Brooklyn was executed on September 7, 2007 by "Frank Santora and/or an entity to be formed which is owned entirely by seller (e.g. Ace Hotels Holding, LLC)" and "Vidu Brother Corp. and Harshad Patel."  Pl. R. 56.1

---

[4] "Patel Aff." refers to the affidavit of defendant Harshad Patel in opposition to summary judgment, Docket Entry 51.

¶¶ 14-15; Pl. Ex. F, Docket Entry 45-8 (copy of contract); Defs. R. 56.1 ¶¶ 14-15 (discussing the

"contract of sale pursuant to which the said promissory note was made and delivered" and

acknowledging that "Defendant Vidu Brothers Corp. executed the aforesaid contract").  The

contract provides that defendants would pay $3,300,000 for a 66% interest in a lot located at

"646 Lorimer Street, Brooklyn . . . (a/k/a '270 Meeker Avenue')" as well as "all the available

and necessary air rights over" several other lots "to the extent they are building on said lots

necessary for building [*sic*] a minimum 75 room hotel consisting of 26,000 sq. ft."  Pl. Ex. F.

§§ 1.01, 2.01, Docket Entry 45-8 at 2; "Final Rider" to the contract, Docket Entry 45-8 at 20

(reiterating that defendants were to own 66% of the lot, in addition to the necessary air rights to

build a 26,000 square foot hotel).  The rider to the contract further specifies that the purchase

price was to be satisfied by a payment of $330,000 at the time the contract was signed, a further

payment of $1,370,000 at the time of closing, and "a purchase money mortgage for

$1,600,000.00 payable monthly at 10% per annum for two (2) years" secured by Patel's hotel in

Waynesboro, Pennsylvania.[5, 6]  *Id.* ¶¶ 2.1(b)-(c), 2.3, Docket Entry 45-8 at 9-10.  Finally, the

rider contains an integration clause, including the following language: "[a]ll prior verbal and

written understandings and agreements, if any, between the parties hereto are merged into this

Agreement, which alone fully and completely expresses their agreement. . . . There are no

collateral Promises, nor any conditions precedent or subsequent to the effectiveness of this

Agreement."  *Id.* ¶ 12.1, Docket Entry 45-8 at 15-16.

     On October 12, 2007, the day the note was executed, Ace Hotels and defendants closed

on the real estate transaction.  Cohen Aff. ¶ 2; Santora Aff. ¶ 2 (affirming Cohen's account);

---

[5] The rider provides that it controls if any inconsistencies arise between it and the contract.  *See* Pl. Ex. F., Docket Entry 45-8 at 8.

[6] As noted above in the discussion of the second promissory note, Santora or his business entity had the option of buying back a 16% share, which it apparently exercised.  A copy of the agreement to exercise this option was included as part of defendants' reply papers in support of their motion to dismiss.  *See* Docket Entry 21-6.

Curran Aff. ¶¶ 24-26 (describing the closing and the presence of Patel, Cohen and Santora at this exchange).[7, 8]  Finally, Ace Hotels, Vidu Brother and Vidu's Sons, a limited liability company apparently consisting of Patel and Ace Hotels, executed a management agreement on February 12, 2008 detailing the responsibilities of those entities vis-à-vis the yet to be built hotel on the lot discussed above.  *See* Management Agreement, Docket Entry 12-2; *see also* Curran Aff. ¶ 32 (describing the Vidu's Sons entity and characterizing the agreement as "one of the few actual embodiments of the [Ace Hotels and Vidu Brother] partnership in documentary form").  Although defendants also reference a "partnership or Joint Venture Agreement," *see* Defs. Mem. at 7, this agreement does not appear to be included in the record or to be quoted by either party.

The parties' accounts diverge as to whether the real estate the parties closed on constituted the entire consideration for the note.  Defendant Patel contends that the note "was intended to represent the balance of [his] equity investment" in both the property and a future venture to build a hotel on the site.  Patel Aff. ¶ 5; *see also id.* ¶ 4 (stating that Santora, Cohen and Patel attributed a value of $3.3 million dollars to several lots near the one defendants purchased and a value of $1.7 million to a company that would be formed to manage the project).  Plaintiff, by contrast, states that the sole consideration for the note was defendants' interest in the real property.  *See* Cohen Aff. ¶ 7 (stating that "at no time did ACE Hotels and Holding LLC [*sic*] or its officer[s] . . . make any representations or warranties to either defendant . . . that defendant's securing financing to construct a hotel was a condition or pre-condition to defendants['] duty to pay the promissory note, [or] that ACE Hotels and Holdings LLC, myself

---

[7] "Cohen Aff." refers to the affidavit of Sanford Cohen, principal of plaintiff, Docket Entry 45-1.  "Santora Aff." refers to the affidavit of Frank Santora, attached to plaintiff's reply papers, Docket Entry 54-1.  Both affidavits were submitted by plaintiff.  "Curran Aff." refers to the affidavit of former counsel to defendants, Michael Curran, Docket Entry 48.  The Curran affidavit was submitted by defendants.

[8] Plaintiff lists as one of the exhibits to its summary judgment motion a "Deed of Real Property to Defendant Vidu Brothers Corp."  The exhibit, however, appears to be a deed between Ace Estates Corporation and the plaintiff.  *See* Pl. Ex. K, Docket Entry 45-13.

or Frank Santoro [*sic*] were 'partners' with the defendants"); *see also* Santora Aff. ¶ 10 (admitting that there were discussions between Ace Hotels and defendant Patel about future construction of a hotel but averring that this project was not a condition of the note's execution).

The note was transferred approximately two years later, on October 7, 2009, from Ace Hotels to plaintiff, Crotona 1967 Corporation.  Pl. R. 56.1 ¶ 16; Pl. Ex. G, Docket Entry 45-9 (copy of assignment); *see also* Santora Aff. ¶ 3 (stating that he "and [his] nominee entity Ace Hotel LLC, duly assigned the Purchase Money Promissory Note . . . over to present plaintiff Crotona 1967 Corp.").[9]  Crotona's principal is Cohen, the former principal of Ace Hotels. Amend. Compl. ¶ 1.

When the note became due in October 2009, plaintiff made a demand for payment and interest.  *See* Pl. Ex. H, Docket Entry 45-10.  Defendants acknowledge receipt of this demand and that they did not make any payment in response.  *See* Pl. R. 56.1 ¶¶ 11-12; Defs. R. 56.1 ¶¶ 11-12.  In March 2012, plaintiff moved for summary judgment on its claims of entitlement to payment under the note.

### DISCUSSION

### I.      Jurisdiction and Joinder of Necessary Parties

Plaintiff originally brought this case in the U.S. District Court for the Southern District of New York pursuant to 28 U.S.C. § 1332.  *See* Am. Compl. ¶ 7.  Specifically, plaintiff stated that it is a corporation organized under New York law with its principal place of business in New York, Am. Compl. ¶ 9, and that both the individual and corporate defendants are citizens of New Jersey, *id.* ¶¶ 12-13.  Therefore, plaintiff alleged sufficient facts to establish diversity jurisdiction.

---

[9] Defendants state that they do not have adequate knowledge to confirm or deny that this transfer took place, *see* Defs. R. 56.1 ¶ 16; however, they acknowledge that Crotona made the demand for payment under the note, *see id.* ¶ 11, and they do not appear to contest that plaintiff holds the note.

Defendants originally contested this basis for jurisdiction, however, by bringing a motion to dismiss, or, in the alternative, to change venue while the case remained in the Southern District. *See* Docket Entry 11. This motion called for dismissal on the ground that joinder of necessary parties would destroy diversity. Pl. Mot. to Dismiss Mem. at 5-8, Docket Entry 13. Specifically, defendants argued that Ace Hotels, related company Ace Estates, and Santora were necessary parties. *See id.* at 4. Examining the motion, the Honorable Naomi Reice Buchwald found that venue in the Southern District was improper and transferred the case to this Court without reaching the joinder question. *See* Order dated Dec. 21, 2010, Docket Entry 23.

Following Judge Buchwald's ruling and the subsequent transfer to this Court, I concluded that defendants' motion raised issues about individual defendant Patel's citizenship, as well as questions concerning indispensible parties. *See* Order dated Apr. 6, 2011. I therefore directed defendants to identify the state where Patel claimed to reside and to clarify their position on the addition of purportedly indispensible parties. *Id.* Following a letter from defendants' then counsel stating that Mr. Patel resided "*[i]n both states* [New York and New Jersey] *equally*," *see* Docket Entry 28 (emphasis in original), I terminated the motion to dismiss without prejudice to renew following jurisdictional discovery. *See* Order dated Apr. 27, 2011.

Subsequently, new counsel appeared for defendants and wrote to the Court, stating that "in light of the question surrounding the concept of 'dual residency,'" defendant Patel "consents to the jurisdiction of this court." Docket Entry 33. While a party may not "consent" to a federal court's jurisdiction where that jurisdiction does not exist, *see, e.g.*, *United Food & Commercial Workers Union v. Centermark Props.*, 30 F.3d 298, 303 (2d Cir. 1994) ("[l]itigants . . . cannot waive subject matter jurisdiction by express consent, conduct or estoppel" (internal citation omitted)), I understand that defendants are here indicating that they no longer contest the facts

alleged in plaintiff's complaint that establish diversity jurisdiction.

Defendants also appear to have abandoned their contention that dismissal is required under Federal Rule of Civil Procedure 12(b)(7) for nonjoinder of necessary parties. However, a court must *sua sponte* order a necessary party joined when none of the parties in the case have sued the indispensable party. Fed. R. Civ. P. 19(a)(2). To determine whether a party is indispensable to an action, courts must first analyze "whether an absent party belongs in the suit, *i.e.*, whether the party qualifies as a 'necessary' party under Rule 19(a)." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). The Rule states, in relevant part, that a party is necessary when, "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). "If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)," which addresses when an action should be dismissed because joinder of the necessary party would destroy subject matter jurisdiction or otherwise be infeasible. *Viacom Int'l*, 212 F.3d at 724 (citing *Assoc. Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir. 1990)).

In this case, all necessary parties – that is, all persons and entities with rights and obligations pursuant to the promissory note at issue – have been joined. More to the point, plaintiff's status as an assignee of the note does not warrant joinder of the original note holder, Ace Hotels. New York law provides that any claim or demand may be transferred, absent an explicit provision in the underlying instrument prohibiting assignment. *Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*, 117 F. Supp. 2d 394, 399 (S.D.N.Y. 2000). Moreover, it is well-settled that "an assignee stands in the shoes of the assignor. He takes all rights of the assignor, no greater and no less, receiving the same legal rights and subject to the same equities and burdens."

*O'Brien v. Argo Partners, Inc.*, 736 F. Supp. 2d 528, 535 (E.D.N.Y. 2010) (internal quotation marks omitted); *see also Cirone v. Tower Ins. Co. of New York*, 76 A.D.3d 883, 884 (1st Dep't 2010). Accordingly, an assignee may sue in his own right and without the assignor as a party. Thus, plaintiff is the appropriate party to sue for relief, and it has sued the proper parties, the note obligee, Vidu Brother, and the guarantor, Patel.

Defendants' fraudulent inducement defense, discussed further below, does not alter this analysis. Defendants may maintain this defense without joining Ace Hotels, Santora or others as parties. *See Thornock v. Kinderhill Corp.*, 749 F. Supp. 513, 518 (S.D.N.Y. 1990) (noting that a defense of fraudulent inducement may be asserted even if the alleged fraud was perpetrated by a third party, at least "where the third party was at some time the holder or owner of the instrument" (citing New York cases)); *accord Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 471 (S.D.N.Y. 2006).[10] In sum, no other parties to the case are required to "accord complete relief," Fed. R. Civ. P. 19(a)(1)(A), and the Court's jurisdiction over this case is clear.

## II. Plaintiff's Motion for Summary Judgment

### a. *Summary judgment standard*

A party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if it "might affect the outcome of the suit under the governing law," and a dispute about that fact is genuine "if the evidence

---

[10] New York cases imply, but do not explicitly state, that fraud in the inducement cannot be asserted as a defense against one who holds a note in due course. *See* N.Y. U.C.C. §§ 3-302 (defining a holder in due course); 3-305 (defining the rights of a holder in due course). A number of courts, however, permit this defense to be employed when, as here, "there is no contention by plaintiff that it held the note in due course." *See, e.g.*, *Pan Atlantic Grp., Inc. v. Isacsen*, 495 N.Y.S.2d 458, 459 (2d Dep't 1985); *see also Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 226 (S.D.N.Y. 1990) (noting that "[i]f a party establishes defenses, the burden then shifts to the holder to prove that it is not merely a holder but a holder in due course" (internal citations omitted)).

[supporting it] is such that a reasonable jury could return a verdict for the nonmoving party."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation omitted).

In reaching a determination on summary judgment, the Court must resolve ambiguities
and draw reasonable inferences in favor of the nonmoving party. *Coach Leatherware Co. v.
AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991). The moving party bears the initial burden of
establishing that there are no genuine issues of material fact; once it does so, the non-moving
party may defeat summary judgment only by producing evidence of specific facts that raise a
genuine issue for trial. *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir.
1996). Mere conclusory allegations, however, are insufficient, and "[t]here must be more than a
'scintilla of evidence'" to defeat a motion for summary judgment. *Del. & Hudson Ry. Co. v.
Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252).

b.  *The* prima facie *case for enforcement of the promissory note*

"Actions for recovery on a promissory note are appropriately decided by motion for
summary judgment" because "[a] promissory note stands on its own and establishes the
plaintiff's right to payment." *Camofi*, 452 F. Supp. 2d at 470. To make out a *prima facie* case
under New York law, "plaintiff must provide proof of the valid note and of defendant's failure,
despite proper demand, to make payment." *MM Ariz. Holdings LLC v. Bonanno*, 658 F. Supp.
2d 589, 592 (S.D.N.Y. 2009) (citing *Export-Import Bank of U.S. v. Agricola Del Mar BCS*, 536
F. Supp. 2d 345, 349 (S.D.N.Y. 2008)). Once a *prima facie* showing is made, "the burden shifts
to the defendant to prove the 'existence' of a triable issue of fact in the form of a bona fide
defense against the note." *In re RMM Records & Video Corp.*, 372 B.R. 603, 609 (Bankr.
S.D.N.Y. 2007) (quoting *Camofi Master*, 452 F. Supp. 2d at 470)).

The undisputed facts establish plaintiff's *prima facie* case for recovery under the

10

promissory note.  Defendants do not dispute the authenticity of the promissory note for $800,000

between defendant Vidu Brother and Ace Hotels Holding.  *See* Defs. R. 56.1 ¶¶ 2-3, 7-8.

Although defendants "[d]eny any knowledge that on or about October 7, 2009, the

payee/oblige[e] on the . . . promissory note, Ace Hotel Holdings LLC transferred the . . . note

and personal guarantee by written assignment to present plaintiff, Crotona 1967 Corp," Defs. R.

56.1 ¶ 16, they do not point to any evidence calling into question whether there was a valid

assignment from Ace Hotels to plaintiff.  *See* Pl. Ex. G., Docket Entry 45-9 (copy of the

assignment).  Finally, defendants also admit that plaintiff demanded payment of the principal,

plus interest provided for in the note and attorney's fees, and that defendants did not pay this

amount after receiving plaintiff's demand.  Defs. R. 56.1 ¶¶ 11-12.  I therefore turn to

defendants' defenses to enforcement of the note.

        c.  *Defenses to enforcement of the note*

      Defendants contend that they should not be required to satisfy their obligations under the

note because they were fraudulently induced into signing it.[11]  Under New York law, a claim of

fraudulent inducement requires a showing by clear and convincing evidence: "(1) that the

[adverse party] made a representation, (2) as to a material fact, (3) which was false, and (4) and

known to be false by the [adverse party], (5) that the representation was made for the purpose of

inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in

ignorance of its falsity (8) to his injury."  *Uni-Rty Corp. v. Guangdong, Inc.*, 2012 WL 1901200,

---

[11] While defendants listed, without elaboration, a number of defenses in their answer, as well as a counterclaim for fraud, Answer & Counterclaim ¶¶ 49-80, Docket Entry 39, these additional defenses are not raised by defendants in opposition to summary judgment and so will not be considered here.  *See, e.g.*, Defs. Mem. at 5-6 (asserting that plaintiff's motion should be denied because defendants "were fraudulently induced to execute" the note and other related agreements).  "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."  *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) (citing *Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998)); *see also Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 310 (finding that the non-moving party abandoned the affirmative defenses that it had not briefed in its opposition).

at *4 (S.D.N.Y. May 25, 2012) (quoting *Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72, 76 (2d Cir. 1986)).  Moreover, "[t]o be considered material, misrepresentations must relate to the terms or conditions of the loan itself." *Camofi*, 452 F. Supp. 2d at 474 (internal citation omitted).

A central inquiry in the fraudulent inducement analysis is whether the reliance of the allegedly defrauded party on the representations of the other was reasonable.  *See Psenicska v. Twentieth Century Fox Film Corp.*, 409 Fed. Appx. 368, 371 (2d Cir. 2009) (noting that "[u]nder New York law, reasonable reliance is an essential element of fraudulent inducement").  A party must exercise diligence in determining whether or not the representations at issue were false; "when [the party] 'has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means.'"  *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 118 (S.D.N.Y. 2008), *aff'd sub nom. Eugenia VI Venture Holdings, Ltd. v. Glaser*, 370 Fed. App'x 197 (2d Cir. 2010) (internal citation omitted).  "In assessing the reasonableness of a [party's] alleged reliance, [courts] consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Morales Elec. Contracting, Inc. v. Siemens Bldg. Tech., Inc.*, 2012 WL 1038865, at *7 (E.D.N.Y. Mar. 28, 2012) (citing *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003)).  Evaluated in light of these principles, defendants' claim of fraudulent inducement fails as a matter of law.

Defendants' allegations of fraudulent inducement generally concern two subjects: the value of the real property defendants acquired, and the plans to form a joint venture with the seller to operate a hotel on that property.  With respect to the value of the real estate conveyed,

plaintiff contends that Frank Santora, the purported seller of the property, did not in fact own it, and that it was subject to one or more mortgages at the time of the sale.  Answer & Counterclaim ¶¶ 67-69.  With respect to the promise of a joint venture, defendants contend that Santora represented that he and defendants would be equal partners in an entity that would construct and own a hotel on the property.  *Id.* ¶¶ 63,76.  Neither set of allegations is sufficient to defeat summary judgment.

Defendants' allegations concerning the ownership of the property and the mortgages that may have encumbered it must be evaluated in light of the facts that defendants were represented by counsel in connection with their purchase of the real property, and that the ownership and any liens on the property were matters of public record.  Defendants have submitted as part of their opposition to plaintiff's motion an affidavit of Michael Curran, the attorney who represented them in connection with the underlying transaction.  Docket Entry 48.  In his affidavit, Curran acknowledges that he researched the subject property on defendants' behalf and learned the identity of its true owner.  Curran Aff. ¶ 6.  Curran's affidavit also states that, prior to the closing in October 2007, he was aware that there were "many, many mortgages littering the property." Curran Aff. ¶ 15.  Indeed, an internet search revealing mortgages on the property is attached as an exhibit to Curran's affidavit and, as Curran states, the mortgages can still be seen on the City's registry website.  Curran Aff. ¶ 15 and Ex. 1; Automated City Register Information System (ACRIS), http://www.nyc.gov/html/dof/html/jump/acris.shtml/ (last visited Feb. 7, 2013) (recording mortgages on and other information about the parcel at issue here).   Finally, defendants do not allege that they were prevented or hindered in any effort they may have made to obtain an appraisal of the property.  Under these circumstances, it is clear that defendants could not have reasonably relied on any representations the seller may have made about the

ownership of the property, its fair market value, or whether it was encumbered by mortgage liens.

The contract of sale itself poses another obstacle to this aspect of defendants' fraudulent inducement defense. The contract contains the following clause:

> Before entering into this contract, Purchaser has made such examination of the Premises, the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representation, warranties or statements were made in writing or orally[.]

Pl. Ex. F, Contract of Sale § 5.02, Docket Entry 45-8 at 4. A rider to the contract similarly states that "Purchaser further acknowledges that, prior to the execution of this Agreement, Purchaser has been granted the right and opportunity to make a full investigation of the Property and financial or other information relating to the Property," and that the Seller is not "liable or bound" by any promises or representations "pertaining to the Property. . . including, but not limited to, any matter or thing affecting or relating to the Property." Pl. Ex. F, Rider to Contract of Sale § 12.2.

Although under New York law a general merger clause will not preclude parol evidence of fraudulent inducement, "[w]hen . . . the contract states that a contracting party disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations." *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993); *see also Thornock v. Kinderhill Corp.*, 749 F. Supp. 513, 519 (S.D.N.Y. 1990) (holding that a claim of fraudulent inducement may be waived by contractual language). Here, as indicated above, the contract

14

explicitly states that defendants had the opportunity to investigate all financial and other relevant aspects of the property they acquired.  Moreover, as indicated above, it appears their attorney in fact conducted an investigation and learned all of the facts about the property that defendants now claim were misrepresented.  Under these circumstances, there can be no viable claim of fraudulent inducement.

To the extent defendants contend the consideration for the note at issue was inadequate, this argument fails as well.  It is undisputed that the note at issue was made and delivered pursuant to a contract for the sale of an interest in real property.  Defs. R. 56.1 ¶ 14.  As discussed above, the contract provided that defendants would pay a total of $3,300,000 for a 66% interest in certain real estate, payable in part with two notes, each in the amount of $800,000.  Docket Entry 45-8.[12]  Defendants do not deny that the interest in real estate they acquired was at least partial consideration for the note; rather, it seems defendants argue that the consideration was inadequate because the face amount of the promissory note exceeded the value of the real estate they acquired, net of the amount they paid in cash.  Patel Aff. ¶ 4.

Defendant's argument must be rejected because alleged inadequacy of consideration is not a basis for avoiding a contractual obligation.  As stated in a leading treatise,

> It is an elementary and oft quoted principle that the law will not inquire into the adequacy of consideration as long as the consideration is otherwise valid or sufficient to support a promise.  By this is meant that so long as the requirement of a bargained-for benefit or detriment is satisfied, the fact that the relative value or worth of the exchange is unequal is irrelevant so that anything which fulfills the requirement of consideration will support a promise, regardless of the comparative value of the consideration and of the thing promised. The rule is almost as old as the doctrine of consideration itself.

3 Richard A. Lord, *Williston on Contracts* § 7:21 (4th ed. 2012); *see also Apfel v. Prudential-*

---

[12] More precisely, the contract provided for the seller to take back a purchase money mortgage in the amount of $1,600,000.  Docket Entry 45-8 at 9.  A mortgage loan was never made; however, defendants provided two promissory notes, each in the amount of $800,000, at or about the time of the closing.

*Bache Secs., Inc.*, 81 N.Y.2d 470, 475-76 (1993) (noting that, "[u]nder the traditional principles of contract law, the parties to a contract are free to make their bargain, even if the consideration exchanged is grossly unequal or of dubious value); *U.S. Engine Prod., Inc. v. AGCS Marine Ins. Co.*, 769 F. Supp. 2d 626, 628 (S.D.N.Y. 2011) (same). Accordingly, to the extent defendants contend that the promissory note at issue was given in exchange for inadequate consideration, this argument is insufficient to defeat summary judgment.

As discussed above, the second prong of defendants' claim of fraudulent inducement alleges that Frank Santora, the seller of property, committed to enter into a joint venture with defendants to build and operate a hotel on the acquired property. Defendants allege that Santora had no intention of going forward with the project. Def. Mem., Docket Entry 50 at 5. Defendants further allege that Santora was not financially capable of fulfilling the obligations he undertook as a joint venture partner.

This aspect of defendants' fraudulent inducement argument fails as well, for several reasons. First, according to defendants, they and Santora contemplated that the planned hotel would be operational within two years; indeed, defendants contend that one of the two promissory notes executed by defendants provided for no interest to be paid for two years for that very reason. Def. Mem., Docket Entry 50 at 4; Patel Aff. ¶ 4. Defendants, however, have not submitted any written instrument purporting to form a joint venture or including a representation by Santora with respect to one.[13] Any oral agreement concerning an agreement to own and operate the hotel would thus be unenforceable because New York law states that "[e]very agreement, promise or undertaking is void, unless it . . . be in writing . . . , if such agreement, promise or undertaking . . . [b]y its terms is not to be performed within one year form

---

[13] Defendants do identify a management agreement, submitted in connection with an earlier motion as Docket Entry 12-2, but it is dated February 12, 2008, after the real estate contract and promissory note were executed in October of 2007 and thus could not have been relied upon at that time.

the making thereof." N.Y. Gen. Oblig. Law § 5-701(a)(1). This statute applies to partnership

and joint venture agreements that cannot be performed within one year.[14]   A party represented

by counsel could not reasonably have relied upon any oral representations concerning a joint

venture that would likely have proven unenforceable.

The absence of a written agreement should have been of particular concern to defendants

in light of the doubts about the transaction expressed by their attorney.  Curran states in his

affidavit that, in the summer of 2007, before the note was executed, he told defendant Patel "that

I thought the scheme made no sense and that his partners were acting very suspiciously and that

he [Patel] should walk away." Curran Aff. ¶ 12.  Patel, who has submitted Curran's affidavit as

part of his opposition to summary judgment, does not deny receiving this advice from his

attorney.  Indeed, Patel acknowledges that he went forward with the transaction, despite his

reservations, for his own tax purposes, stating that "[b]ut for the urgency of the 1031 exchange [a

desire on Patel's part to "roll over" the proceeds of an unrelated sale of real property to avoid tax

consequences], I would not have committed this $1,700,000 to these parties."  Patel Aff. ¶¶ 3, 9.

In any event, the representations defendants allege they relied upon concerned future

performance.  Misrepresentations alleged as part of a fraudulent inducement defense, however,

"must be more than merely promissory statements about what is to be done in the future; they

must be misstatements of material fact or promises made with a present, albeit undisclosed,

intent not to perform."  *Schwarz v. ThinkStrategy Capital Mgmt. LLC*, 797 F. Supp. 2d 439, 444

---

[14] New York courts have observed that the Statute of Frauds is not often applicable to joint ventures and partnerships.  *See, e.g.*, *Prince v. O'Brien*, 650 N.Y.S.2d 157, 158 (1st Dep't 1996).  However, a number of cases have clarified that "[a]n oral joint venture is clearly within the scope of the New York Statute of Frauds if its stated terms cannot be performed within one year of its making. . . . [I]f the joint venture is not for a stated term but for a stated purpose, the Statute of Frauds will not act as a bar to enforcement if it is possible that the purpose could be achieved in one year." *Abed v. Azar*, 2010 WL 103867, at *3 (S.D.N.Y. Jan. 5, 2010).  Here, where according to defendants the parties to the real estate contract agreed that no interest would be paid on a promissory note for two years because it would take that long before the hotel was completed, it is unreasonable to believe that the purpose of the joint venture could be accomplished within a year.

n.27 (S.D.N.Y. 2011) (citing *Shlang v. Bear's Estates Dev. of Smallwood, N.Y., Inc.*, 599

N.Y.S.2d 141, 143 (3d Dep't 1993)).  Thus, "'the failure to fulfill a promise to perform future

acts,' (or statements of future intent) can [only] support a fraud action . . . [if] 'there existed

intent not to perform *at the time the promise was made*.'"  *Soley v. Wasserman*, 823 F. Supp. 2d

221, 235 (S.D.N.Y. 2011) (quoting *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994))

(emphasis in original).  Defendants have failed to offer any evidence that Santora or Ace Hotels

did not intend to fulfill certain promises of future action, and rely instead only on their own

conclusory statements.  Indeed, if there is any evidence in the record of a failure to fulfill a

commitment to act in the future, it concerns a failure of defendants.  The contract provides that

defendants would obtain financing for purposes of construction.  Rider to Contract § 2.5, Docket

Entry 45-8 at 10.  It appears, however, that they were unable to do so.  Curran Aff. ¶ 34.

Finally, defendants allege that they were misled because Santora had been the subject of

lawsuits and a bankruptcy proceeding.  Patel Aff. ¶ 8.F.  Patel does not specifically allege,

though, that Santora concealed these lawsuits or the bankruptcy proceeding.  To the contrary,

according to Curran, Santora in fact revealed that lawsuits had driven him out of the construction

crane business at meetings attended by Patel before the promissory note was executed.  Curran

Aff. ¶ 10.  In any event, lawsuits and bankruptcy proceedings are matters of public record, and

any involving Santora could have been uncovered with due diligence.

For all these reasons, I conclude that defendants have not put forward any viable defense

to the obligation of Vidu Brother under the note.  As plaintiff has established a *prima facie* case

that defendant Vidu Brother is liable for the amount of the note, plaintiff's motion for summary

judgment on this ground is granted.

d.  *Patel's individual guaranty*

18

Plaintiff seeks to hold defendant Patel individually liable for the value of the promissory note because he executed a personal guaranty at the same time as the note.  Pl. R. 56.1 ¶ 4; Pl. Ex. E.  As discussed above, the parties contest the continuing validity of the guaranty in light of a handwritten notation on it that appears to indicate it was intended to be temporary.  Defendants claim that the guaranty was terminated when Curran, defendants' former counsel, wrote to the sellers of the property and provided a date by which permanent security was to be put in place and Patel's guaranty was to expire.  Defs. Mem. at 8; *see also* Curran Aff. ¶ 30 (stating that he "set a deadline of three months from the closing for the 'interim sec. agreement' or personal guaranty to expire in January 2008" by writing and emailing Frank Castiglione, Santora's lawyer).  Curran's letter states as follows:

> You have stated you will be sending the security agreement to my client for execution, following . . . which, the Personal Guaranty will be voided.  Purchaser has stated that the validity of the Personal Guaranty shall lapse after a reasonable period.  We now set the deadline at January 12, 2008.

Curran Ex. 8, Docket Entry 48 at 74.  The sellers, apparently, did not respond.

There are thus two questions regarding Patel's personal liability for the debt under the promissory note: first, whether the guaranty was terminated by Curran's actions, and, second, if it was not terminated, whether the guaranty was, in fact, intended to be only a temporary substitute for other security.  As a general matter, guaranties are interpreted similarly to other contracts.  *In re S. Side House, LLC*, 470 B.R. 659, 675 (Bankr. E.D.N.Y. 2012) (citing *Gen. Phoenix Corp. v. Cabot*, 300 N.Y. 87, 92 (1949)).  As such, "a motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning." *Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993) (internal citations omitted).

The answer to the first question is clear: the guaranty was not properly terminated or

19

rescinded.  Under New York law, "a written guarantee remains in effect until terminated in the manner specified in the agreement itself."  *Caldor, Inc. v. Mattel, Inc.*, 817 F. Supp. 408, 413 (S.D.N.Y. 1993) (citing *Chem. Bank v. Wasserman*, 371 N.Y.S.2d 919, 920 (1975)).  A guaranty may be enforced even if it does not provide for a means of termination.  *In re S. Side House, LLC*, 470 B.R. at 676 (explaining that "[w]hen a guarantor has given an unconditional guaranty, its liability is clear as a matter of law" (internal citation omitted)); *EMI Music Marketing v. Avatar Records, Inc.*, 317 F. Supp. 2d 412, 419 (S.D.N.Y. 2004) (noting that, "[a]ssuming that the principal debtor is liable, a guaranty is enforceable if it is unconditional and written in clear and unambiguous terms" (internal citation omitted)).

Defendants imply in their briefing that Patel's guaranty was a continuing guaranty.  Defs. Mem. at 8.  Defendants are correct that continuing, or certain unconditional, guaranties may be terminated upon notice to the other parties.  *See id.* (citing *Emery v. Baltz*, 94 N.Y. 408, 414 (1884); *see also 27th St. Assocs., LLC v. Lehrer*, 772 N.Y.S.2d 28, 30 (1st Dep't 2004) (holding that a "continuing guaranty may be terminated by the guarantor by notice to the obligee . . . revoking his liability for obligations that may be incurred subsequent to the notice," even where the guaranty does not specify what form that notice must take (internal citations omitted)).  A continuing guaranty is one that "covers obligations within its scope incurred after the guaranty is signed" and is characterized by "broad" language "covering all indebtedness of the guaranteed party to the creditor of every kind and character."  *United Natural Foods, Inc. v. Burgess*, 488 F. Supp. 2d 384, 394 (S.D.N.Y. 2007) (collecting New York cases) (internal quotation marks omitted).

In this case, the guaranty is not continuing and thus could not have been terminated by the defendants' unilateral action.  The guaranty here specifies that it pertains to the payment of

20

notes executed by the corporate defendant, Vidu Brother, on the same date the guaranty was signed, and sets the deadline for payment at the time those notes are due, "by acceleration or otherwise."  *See* Pl. Ex. E.  In any event, even a continuing guaranty may be revoked only with respect to obligations incurred after notice of its revocation.  *27th St. Assocs.*, 772 N.Y.S.2d at 30; *see also Flexi-Van Leasing, Inc. v. Isaias*, 23 F. Supp. 2d 419, 423 (S.D.N.Y. 1998) (noting that "unless the plain meaning of a guaranty 'clearly import[s] a continuing liability, it will be limited to the transaction for which it was given'" (quoting *Dunkirk Trust Co. v. Schmitt*, 316 F.2d 537, 539 (2d Cir. 1963))).

It is less clear, in light of the handwritten notation on the guaranty, whether it was intended to be temporary and thus whether it should be understood to have been no longer valid at the time of Vidu Brother's default.  *See Caldor*, 817 F. Supp. 2d at 410 (explaining that, under New York law, a "guarantee agreement is to be construed like other contracts in order to give effect to the parties' intentions").  The parties present very different accounts with regard to whether the notation on the guaranty expressing that it was to provide only "interim security" was made with the assent of both parties, *see* Curran Aff. ¶¶ 29-30, or added unilaterally by defendants' attorney, *see* Pl. Reply ¶ 48.  I note in this regard that there does not appear to be any prohibition under New York law on handwritten additions to contracts like guaranties; on the contrary, in some cases, "handwritten entries on a printed document take precedence over those in typeface.  This proposition is based on the belief that a handwritten entry expresses the latest intent of the parties to the contract."  *In re Windsor Plumbing Supply Co.., Inc.*, 170 B.R. 503, 523 (Bankr. E.D.N.Y. 1994) (citing *Kratzenstein v. W. Assur. Co.*, 116 N.Y. 54 (1889)).  Moreover, plaintiff has not submitted an executed copy of the guaranty that does not contain the handwritten notation.

21

Defendant Patel has thus pointed to a genuine issue of material fact precluding summary judgment with regard to the continuing validity of his personal guaranty.  *See Sayers*, 7 F.3d at 1094 (holding that "[i]f the language is susceptible to different reasonable interpretations, and where there is relevant extrinsic evidence of the parties actual intent,' then the contract's meaning becomes an issue of fact precluding summary judgment" (internal citation and quotation marks omitted)).  Defendants' motion for summary judgment on the issue of Patel's personal liability under the note is therefore denied.

## III.    Calculation of Damages

### a.   *Unpaid principal and interest*

The note was executed on October 12, 2007 for the sum of $800,000 and provided for 10% interest per annum for two years from that date.[15]  *See* Pl. Ex. C at 1.  The principal and interest were to be paid as a lump sum on October 12, 2009.  Therefore, as of October 2009, defendant Vidu Brother owed $960,000 ($800,000 plus $80,000 for each of the two years during which it owed 10% interest on the note).

### b.   *Post-default interest*

The note also provides for of 15% interest per year on all sums owed from the date of default to the date of payment.  *See* Pl. Ex. C ¶ 1.  The contract defines a default on the note as follows: "Maker shall be in default . . . if after five (5) days written notice from Holder delivered personally or sent certified mail return receipt requested, in which event receipt is deemed two (2) days after mailing, Holder has not received . . . payment."  *Id.*  Plaintiff demanded payment on October 20, 2009 by certified mail.  *See* Pl. Ex. H.  In this letter, plaintiff calculated payment to be due on October 29, 2009.  *Id.* at 2.  I therefore respectfully request that the Clerk of Court

---

[15] Plaintiff makes reference to 10% being due on the note from October 12, 2009 to October 12, 2011.  This appears to be an error.  *See* Declaration of Peter R. Shipman ("Shipman Decl.") ¶ 12, Docket Entry 45.

calculate post-default interest from October 29, 2009 to the date of judgment at the rate of 15% per annum.

       c.   *Attorney's Fees*

The note also provides for reasonable attorney's fees incurred as a result of a default.  Pl. Ex. C ¶ 7.  Plaintiff seeks reasonable attorney's fees in an amount equal to a fixed percentage of the amount of the note.  *See* Pl. Mot. ¶ 14.

The standard for determining reasonable attorney's fees is, in this case, governed by New York law.  *Banca Della Svizzera Italiana v. Cohen*, 756 F. Supp. 805, 808-809 (S.D.N.Y. 1991) (noting, in an action on a promissory note, that the Second Circuit's requirements for attorney time records did not apply because "the instant case [was] based on diversity, and the award sought [was] based on contract and not pursuant to federal statute").  *But see Gallagher v. Medeikon Corp.*, 2011 WL 841370, at *4 (E.D.N.Y. Mar. 8, 2011) (denying attorney's fees in a diversity action brought to enforce the terms of a promissory note because the plaintiff did not comply with the Second Circuit mandate that contemporaneous time records be submitted with any fee application).  New York courts have held that where a party requests a fixed percentage or amount of attorney's fees, the Court must determine whether the amount is reasonable, generally by holding a hearing.  *See, e.g.*, *Cutter Bayview Cleaners, Inc. v. Spotless Shirts, Inc.*, 870 N.Y.S.2d 395, 397 (2d Dep't 2008) (affirming an order granting summary judgment on an action to recover on a promissory note, but remanding the case for a hearing on the reasonableness of attorney's fees where no support for the amount requested was provided); *Coniglio v. Regan*, 588 N.Y.S.2d 888, 889 (2d Dep't 1992) (finding that the trial court "erred in awarding the plaintiff attorneys' fees based on the fixed rate set forth in the promissory note" without evidence of the reasonableness of the resulting fee).  Summary judgment with respect to

attorney's fees is therefore denied.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is GRANTED against defendant Vidu Brother in the principal amount of the note, or $800,000, together with $160,000 in interest as of October 29, 2009 and interest at the rate of 15% per year from October 29, 2009 to the date judgment is entered.  Plaintiff's motion for summary judgment against defendant Patel based upon his guaranty, and for a fixed amount in attorney's fees, is DENIED.


SO ORDERED.


Dated:          Brooklyn, New York
                February 8, 2013

                                          _____/s/_____
                                          STEVEN M. GOLD
                                          United States Magistrate Judge


*U:\rmk 2011-12\Crotona 1967 v Vidu Bros\Crotona Summary Judgment M&O- final.docx*

24